# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

PACIFIC ALLIANCE MEDICAL CENTER
531 W College St
Los Angeles, CA 90012

EL CENTRO REGIONAL MEDICAL CENTER
1415 Ross Ave
El Centro, CA 92243

SCRIPPS MERCY HOSPITAL
4275 Campus Point Ct.
San Diego, CA 92121

SAINT JUDE MEDICAL CENTER
101 E Valencia Mesa Dr
Fullerton, CA 92835

SCRIPPS MEMORIAL HOSPITAL – ENCINITAS
354 Santa Fe Dr
Encinitas, CA 92024

MIDSTATE MEDICAL CENTER
181 Pat Genova Drive
Newington, CT 06111

GRIFFIN HOSPITAL
130 Division St.
Derby, CT 06418

BEEBE MEDICAL CENTER
424 Savannah Rd
Lewes, DE 19958

KUAKINI MEDICAL CENTER
347 N Kuakini St
Honolulu, HI 96817

SAINT MARY'S HOSPITAL – CENTRALIA
400 N Pleasant Ave
Centralia, IL 62801

GOOD   SAMARITAN   REGIONAL   HEALTH
CENTER

Case No. <u>1:26-cv-99</u>

**COMPLAINT FOR JUDICIAL
REVIEW AND DECLARATORY
RELIEF UNDER THE MEDICARE
ACT AND ADMINISTRATIVE
PROCEDURES ACT**

1

400 North Pleasant Avenue
Centralia, IL 62801

UNIVERSITY OF CHICAGO HOSPITALS
8201 S. Cass Ave
Darien, IL 60561

METHODIST MEDICAL CENTER OF ILLINOIS
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

TRINITY REGIONAL - WEST CAMPUS
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

MARSHALLTOWN MEDICAL & SURGICAL
CENTER
405 E Main St.
Marshalltown, IA 50158

TRINITY MUSCATINE HOSPITAL
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

TRINITY REGIONAL MEDICAL CENTER - FORT
DODGE
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

IOWA LUTHERAN HOSPITAL
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

SAINT LUKE'S HOSPITAL - CEDAR RAPIDS
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

IOWA METHODIST MEDICAL CENTER
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

TRINITY REGIONAL MEDICAL CENTER -
TERRACE PARK BETTENDORF
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

ALLEN MEMORIAL HOSPITAL
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

THE FINLEY HOSPITAL
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

SAINT LUKE'S REGIONAL MEDICAL CENTER -
SIOUX CITY
1776 West Lakes Parkway, Suite 400
West Des Moines, IA 50266

WEST JEFFERSON MEDICAL CENTER
1101 Medical Center Blvd
Marrero, LA 70072
TOURO INFIRMARY

EAST JEFFERSON GENERAL HOSPITAL
3401 General DeGaulle,
New Orleans, LA 70114

MERCY HOSPITAL
16444 Paramount Blvd, Unit 103,
Paramount, CA 90723

MAINE MEDICAL CENTER
22 Bramhall St
Portland, ME 04102

THE AROOSTOOK HOSPITAL
140 Academy St
Presque Isle, ME 04769

SOUTHERN MAINE MEDICAL CENTER
1 Medical Center Dr
Biddeford, ME 04005

STEPHENS MEMORIAL HOSPITAL
200 South Geneva Street
Breckenridge, TX 76424

EASTERN MAINE MEDICAL CENTER
489 State St
Bangor, ME 04401

HD GOODALL HOSPITAL
25 June St
Sanford, ME 04073

INLAND HOSPITAL
36485 Inland Valley Dr
Wildomar, CA 92595

MAINE COAST MEMORIAL HOSPITAL
50 Union St
Ellsworth, ME 04605

PEN BAY MEDICAL CENTER
6 Glen Cove Dr
Rockport, ME 04856

MILFORD REGIONAL MEDICAL CENTER
14 Prospect St
Milford, MA 01757

SAINT JOSEPH HEALTH CENTER – SSM
300 1st Capitol Dr
St Charles, MO 63301

SAINT MARY'S - JEFFERSON CITY
2505 Mission Dr
Jefferson City, MO 65109

SAINT JOSEPH HOSPITAL OF KIRKWOOD
525 Couch Ave
Kirkwood, MO 63122

SAINT MARY'S HEALTH CENTER – MO
6420 Clayton Rd
Richmond Heights, MO 63117

DEPAUL HEALTH CENTER
3201 S. Carrollton Ave.
New Orleans, LA 70118

SAINT JOSEPH HOSPITAL – WEST
1100 W Stewart Dr
Orange, CA 92868

BILLINGS CLINIC
2800 10th Ave N

Billings, MT 59101

COMMUNITY MEDICAL CENTER
2823 Fresno St.
Fresno, CA 93721

HEALTHALLIANCE HOSPITAL - BROADWAY
CAMPUS (KINGSTON)
396 Broadway
Kingston, NY 12401

SAINT    JOSEPH'S    MEDICAL    CENTER    –
YONKERS
127 S Broadway
Yonkers, NY 10701

JAMAICA HOSPITAL MEDICAL CENTER
89-00 Van Wyck Expy
Richmond Hill, NY 11418

VASSAR BROTHERS MEDICAL CENTER
45 Reade Pl
Poughkeepsie, NY 12601

RICHMOND UNIVERSITY MEDICAL CENTER
355 Bard Ave
Staten Island, NY 10310

SAINT LUKE'S MEMORIAL HOSPITAL – NY
1656 Champlin Avenue
Utica, NY 13502

SAINT LUKE'S ROOSEVELT HOSPITAL
1111 Amsterdam Avenue
New York, NY 10025-1716

NORTHERN DUTCHESS HOSPITAL
6511 Spring Brook Ave
Rhinebeck, NY 12572

NIAGARA    FALLS    MEMORIAL    MEDICAL
CENTER
621 10th St
Niagara Falls, NY 14301

MIDHUDSON RH OF WESTCHESTER MC
(SAINT FRANCIS HOSPITAL)
241 North Road
Poughkeepsie, NY 12601

FF THOMPSON HOSPITAL
350 Parrish St
Canandaigua, NY 14424

OLEAN GENERAL HOSPITAL
515 Main St
Olean, NY 14760

NYACK HOSPITAL
160 N Midland Ave
Nyack, NY 10960

PECONIC BAY MEDICAL CENTER
1 Heroes Wy
Riverhead, NY 11901

LENOX HILL HOSPITAL
100 E 77th St
New York, NY 10075

GARNET HEALTH MEDICAL CENTER
(FORMERLY ORANGE MC / ARDEN HILL
HOSPITAL)
707 East Main Street
Middletown, NY 10940

BON SECOURS COMMUNITY HOSPITAL
160 E Main St
Port Jervis, NY 12771

SAINT JOSEPH'S HOSPITAL HEALTH CENTER
973 James Street
Syracuse, NY 13203

LONG ISLAND COLLEGE HOSPITAL
339 Hicks St
Brooklyn, NY 11201

SAMARITAN MEDICAL CENTER
801 N Harbor Blvd
Anaheim, CA 92805

GOOD SAMARITAN HOSPITAL
1225 Wilshire Blvd
Los Angeles, CA 90017

COMMUNITY GENERAL HOSPITAL
4900 Broad Road
Syracuse, NY 13215

BETH ISRAEL MEDICAL CENTER
330 Brookline Avenue
Boston, MA 02215

FLUSHING HOSPITAL MEDICAL CENTER
45-00 Parsons Blvd
Flushing, NY 11355

CROUSE HOSPITAL
736 Irving Avenue
Syracuse, NY 13210

ERIE COUNTY MEDICAL CENTER
462 Grider St
Buffalo, NY 14215

HEALTHALLIANCE HOSPITAL - MARY'S AVE
CAMPUS (BENEDICTINE)
105 Marys Ave
Kingston, NY 12401

THE BROOKDALE UNIVERSITY HOSPITAL
AND MEDICAL CENTER
1 Brookdale Plaza
Brooklyn, NY 11212

MVHS - ST. ELIZABETH MEDICAL CENTER
2209 Genesee St
Utica, NY 13501

SAINT CHARLES HOSPITAL – NY
200 Belle Terre Rd
Port Jefferson, NY 11777

MERCY MEDICAL CENTER
16444 Paramount Blvd, Unit 103,
Paramount, CA 90723

SAINT LUKE'S CORNWALL HOSPITAL
70 Dubois St
Newburgh, NY 12550

HUDSON VALLEY HOSPITAL
1980 Crompond Rd
Cortlandt Manor, NY 10567

GOOD    SAMARITAN    HOSPITAL    MEDICAL
CENTER
1225 Wilshire Blvd
Los Angeles, CA 90017

SOUTHAMPTON HOSPITAL
240 Meeting House Ln
Southampton, NY 11968

SAINT JOHN'S EPISCOPAL HOSPITAL
3-27 Beach 19th St
Far Rockaway, NY 11691

INTERFAITH COMMUNITY HOSPITAL
1545 Atlantic Avenue
Brooklyn, NY 1121

GEISINGER COMMUNITY MEDICAL CENTER
1800 Mulberry St
Scranton, PA 18510

THE BLOOMSBURG HOSPITAL
549 Fair St
Bloomsburg, PA 17815

MOUNTAIN    STATES    -    JOHNSON    CITY
MEDICAL CENTER
400 N State of Franklin Rd
Johnson City, TN 37604

MOUNTAIN STATES - INDIAN PATH MEDICAL
CENTER
2000 Brookside Dr
Kingsport, TN 37660

UT    HEALTH    TYLER    (FKA    EAST    TEXAS
MEDICAL CENTER - TYLER)

1000 S Beckham Ave
Tyler, TX 75701
EAST TEXAS MEDICAL CENTER – ATHENS
2000 S Palestine St
Athens, TX 75751

VALLEY MEDICAL CENTER
400 S 43rd St
Renton, WA 98055

REYNOLDS MEMORIAL HOSPITAL
800 Wheeling Ave
Glen Dale, WV 26038

Plaintiffs,

    v.

ROBERT F. KENNEDY, JR., Secretary,
United States Department of Health and
Human Services
200 Independence Avenue S.W.
Washington, D.C. 20201

                Defendant.

## NATURE OF ACTION

1.      This is an action for an order under the Administrative Procedure Act, 5 U.S.C. § 706(1), compelling Defendant, the Secretary of the Department of Health and Human Services, to perform agency action that has been unlawfully withheld and unreasonably denied.

2.      In short, this case involves the Defendant's failure to administer and pay claims to hospitals who serve a disproportionate share of low-income patients, for between twelve and twenty years, at the least. Incredibly, some of these claims date back to the 1990's. During this delay, the Plaintiff Hospitals named in this action have been awaiting administration and payment of their claims for fiscal years 2005-2013, in accordance with binding court cases in 2008 and 2011, and U.S. Supreme Court cases in 2014 and 2020, which determined systematic errors in the

calculations of such hospitals' Medicare reimbursements for a specific cost reporting line item sometimes called "Disproportionate Share Hospital" reimbursement ("DSH").

3.    At the time of the 2008 court decision, certain of the Plaintiff Hospitals' claims were on appeal before the Medicare Provider Reimbursement Review Board ("PRRB"), the Administrator of Centers for Medicare & Medicaid Services ("CMS"), the Medicare fiscal intermediary hearing officer, or the CMS reviewing official.    After the court decision in 2008, Defendant remanded in 2010 all of the Plaintiff Hospitals' appeals to Defendant's Medicare reimbursement contractors to rectify such systematic errors. Ever since, Defendant has delayed administering or paying the Plaintiff Hospitals' increased reimbursement.

4.    In fact, the Secretary's policy in this regard was articulated, as late as 2003, when the Secretary admitted:

> Once a beneficiary elects to enroll in an M+C plan, their benefits are no longer administered under traditional Medicare Part A. Therefore, those patient days should not be included in the Medicare fraction of the DSH patient percentage. Instead, the patient days are included in the total patient days in the Medicaid fraction denominator, and if the M+C enrollee is also Medicaid-eligible, their days are counted in the Medicaid numerator.  (68 Fed. Reg. 27154, 27208 (May 19, 2003)

5.    Despite this clear policy, and despite several major court rulings (described below) holding that Defendant cannot permissibly change this policy until after formal rulemaking (which became effective until 2014), the Defendant has been unreasonably delaying since 2004 by attempting repeatedly to contrive a way to use an exactly OPPOSITE calculation since 2004, putting patient days attributable to a M+C/Part C Days beneficiary INTO the Medicare fraction of

the DSH patient percentage and NOT including those patient days in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for the M+C beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction.[1]

6.      In fact, Defendant has gone so far as to instruct its contractors NOT to pay Plaintiff Hospitals while Defendant continued to ignore binding court rulings, and for arbitrary and capricious reasons, all as described below.   The Plaintiff Hospitals are entitled to these payments, together with interest thereon, as provided by law.   Further details follow.

**PLAINTIFF HOSPITALS' CLAIMS HAVE BEEN RIPE FOR ADMINISTRATION AND PAYMENT SINCE AT LEAST 2011 BUT DEFENDANT HAS FAILED TO TAKE REASONABLY PROMPT ACTION**

7.      As described above, the Secretary's policy as to Part C Days was articulated, as late as 2003, not to include Part C Days (then called Medicare Advantage or M+C) in the Medicare/SSI Fraction but to include them in the Medicaid Fraction.   (68 Fed. Reg. 27154, 27208 (May 19, 2003)

8.      Other issues in the Medicare/SSI Fraction had been addressed by 2010, when the Defendant agency issued a binding ruling, CMS Ruling 1498-R, acquiescing to a 2008 decision of this Court in  *Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20 (D.D.C.), *amended in part*, 587 F. Supp. 2d 37 (D.D.C. 2008), *judgment entered*, 587 F. Supp. 2d 44 (D.D.C. 2008) ("Baystate Decision"), finding systemic errors and omissions in the agency's calculation of a payment formula variable relating to hospitals, like the Plaintiff Hospitals, that treat a disproportionate share of low-income patients.. CMS Ruling 1498-R required the agency's administrative review board to remand all pending administrative appeals challenging that calculation, including appeals

---

[1] Many plaintiff hospitals have filed or are filing lawsuits seeking mandamus to compel the correct calculations by invalidating CMS Rule 1739-F, which has been ruled to be invalid due to impermissible retroactivity. *See, Montefiore Medical Center et al. v. Becerra* (U.S. District Court for the District of Columbia Case number: 1:24-cv-01810 (D.D.C. June 24, 2024), and related cases.

brought by the Plaintiff Hospitals, to the agency's payment contractors for determination of additional payment amounts owed to the appealing hospitals, for services furnished to low-income patients more than nineteen years ago, in 2004 and earlier.

9.      One of the determinants in the calculation of Disproportionate Share reimbursement is the "SSI Fraction" or the "Medicare-SSI Fraction", the numerator of which is comprised of the number of patients served in a particular fiscal year who were eligible for Social Security Income ("SSI") at the time of service, and the denominator of which includes all the patients served by the hospital in that same fiscal year who were eligible for Medicare Part A. Errors in this SSI Fraction were identified in the Baystate Decision and to be rectified by the methodology set forth in CMS Ruling 1498-R.  The changes to the calculations were arithmetic in nature, and resulted in readily ascertainable amounts owed to the Plaintiff Hospitals.    Such amounts, though clearly owed, have still not been paid.

10.     **Defendant Did Not Pay Plaintiffs' Claims Even Though The Northeast Decision Expressly Held That Medicare Part C Days Could Not Be Added Retroactively To The Denominator Of The Medicare-SSI Fraction For Calculating DSH.**  In *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 4-5, 16-17 (D.C. Cir. 2011), the court held that Medicare Part C days could <u>not</u> be added retroactively to the denominator of the Medicare-SSI Fraction for administration of claims for years 1999-2002.  Defendant took the position that a rule amendment to 42 Code of Federal Regulations <u>§ 412.106</u> announced in 2004[2] should be applied retroactively to claims for hospitals' earlier fiscal years (in that case fiscal years 1999-2002).   There, this Court explained:  "Hospitals that serve a disproportionately large number of such patients receive a

---

[2] This was a purported rule, without rulemaking notice-and-comment procedures, which was later invalidated altogether in the case of *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1106 (D.C. Cir. 2014) ("Allina I"), and *Allina II*. 85 Fed. Reg. 47,723, 47,724-25 (Aug. 6, 2020).

statutorily mandated "additional payment" from the Secretary, 42 U.S.C. § 1395ww(d)(5)(F)(i), and whether a particular hospital qualifies for this payment, and the size of the payment the hospital receives, depends on the hospital's DSH fractions. Any rule that alters the method for calculating those fractions, therefore, changes the legal consequences of treating low-income patients." 657 F.3d at 4–5. This court found that, for such years prior to the purported rule change in 2004, Defendant had an established practice of not including Part C days in the denominator of the Medicare-SSI Fraction, which could not be changed by "retroactive rulemaking." "In light of the foregoing, it is apparent that the Secretary's decision to apply her present interpretation of the DSH statute to fiscal years 1999-2002 violates the rule against retroactive rulemaking. The Secretary's interpretation, as set forth in the 2004 rulemaking and resulting amendment to § 412.106, contradicts her former practice of excluding M+C days from the Medicare-SSI Fraction." 657 F.3d at 16–17 *Id.* ("Northeast Decision")[3].

11.    Thus, by 2011, Defendant unquestionably knew exactly how to calculate and administrate the claims at issue in this case, but has failed and refused to do so.

12.    **Defendant Did Not Pay Plaintiffs' Claims Even Though Their Own Policy and the Northeast Decision Expressly Held That Medicare Part C Days Could Not Be Added**

---

[3] In fact, now Justice (then Judge) Kavanaugh, in his concurring opinion to the Northeast Decision explained his belief that the Medicare statute precludes the inclusion of Part C days in the Medicare-SSI Fraction, stating: "If a hospital patient receives Medicare benefits under Medicare Part C for a particular "patient day," is that patient also "entitled" for that same "patient day" to Medicare benefits under Medicare Part A [to include in the Medicare-SSI Fraction]? In my view, the text of the Medicare statute tells us the answer is no. Medicare beneficiaries must choose between government-subsidized private insurance plans under Part C and government-administered insurance under Part A, and after they choose, they are obviously not entitled on the same "patient day" to benefits from both kinds of plans. HHS rejected that interpretation of the text and, as a result, significantly undercompensated Beverly Hospital (and many other hospitals) for the costs of treating Medicare patients…..HHS misapplied the statute." 657 F.3d at 21–22 (*Justice Kavanaugh, , concurring*).

Despite the Northeast Decision, HHS has proceeded to engage in purported formal rulemaking that includes Part C days in the denominator of the Medicare-SSI Fraction, and to purportedly make it retroactive to fiscal years 2013 and prior (including 2004 and prior which the Northeast Decision already decided –and CMS already acknowledged--could not be changed by retroactive rulemaking). *Northeast Decision, Id, (Justice Kavanaugh, dissenting).*  (Emphasis added).

**Retroactively To The Denominator Of The Medicare-SSI Fraction For Calculating DSH and Had to be Included in the Medicaid Fraction.** On April 22, 2015, CMS issued Ruling 1498-R2, which specifically acknowledged and acquiesced in the finding in Medicare-SSI Fraction in the Northeast Decision and stated: "Pursuant to CMS Ruling 1498-R and this amendment, we are not making any changes to, or otherwise adding any Part C claims, to the Medicare Provider Analysis and Review data file.  This amendment likewise does not change or otherwise alter Medicare payment policy regarding Medicare Part C days for patient discharges before October 1, 2004. Regarding such days, the D.C. Circuit Court has found that before October 1, 2004, the Secretary had a "former practice of excluding M+C [Medicare Part C] days from the Medicare-SSI Fraction." (*Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 16-17 (D.C. Cir. 2011).) The D.C. Circuit Court found, as a matter of practice, excluded Medicare Part C days from the Medicare-SSI fraction for patient discharges before October 1, 2004….  ," specifically citing *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 16-17 (D.C. Cir. 2011).

13.     Despite clear acquiescence by Defendant to the *Baystate* Decision, which corrected errors in the calculations, and the *Northeast* Decision, which specifically stated that HHS could not make a retroactive rule to add Part C Days to the denominator of the Medicare-SSI Fraction, and despite the clear date line drawn by Defendant that such would be the Medicare payment policy for patient discharges before October 1, 2004, Defendant still did not pay the Plaintiff Hospitals' claims which were clearly proper, ripe and overdue for administration and payment. **Hospitals Filed And Prevailed in The *Allina* Cases, Including *Allina II* in Which the Supreme Court Held that Part C Days Could Not be Added to the Medicare/SSI Fraction for Fiscal Years 2013 and Prior**

14.     Thereafter, *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1106 (D.C. Cir.

2014)  ("*Allina I*") was filed August 27, 2010 in the D.C. District Court and later appealed; the

D.C. Circuit issued its decision on April 1, 2014.   *Azar v. Allina Health Servs., 139 S. Ct. 1804*

*("Allina II")* (Supreme Court, Azar v. Allina Health Services) was filed April 27, 2018 (petition

for certiorari docketed April 30, 2018). The Supreme Court issued its decision on June 3, 2019. In

both cases, the *Allina* plaintiff hospitals challenged how the Defendant's purported rule calculated

Medicare Disproportionate Share Hospital payments, specifically the inclusion of Medicare Part

C (Medicare Advantage) patient days in the formula. In *Allina I* (2014), the D.C. Circuit

invalidated HHS's 2004 "rule," changing the calculation to include Medicare Part C (Medicare

Advantage) days in the Medicare fraction, as improperly adopted. In *Allina II* (2019), the Supreme

Court held that HHS violated statutory notice-and-comment requirements in changing the

calculation to include Medicare Part C (Medicare Advantage) days in the Medicare fraction, siding

with the hospitals.

15.     **In 2016-2019, Defendant Obtained Remand Relief in Other Federal Court**
**Mass Action Cases by Committing to "Give Plaintiffs their Victory" and Include the Part C**
**Days in the Medicaid Fraction instead of the Medicare/SSI Fraction, Yet Still Did not Do So**
**and Still Did Not Pay Plaintiffs**.  When Defendant did not comply with the Court rulings in *Allina*

*I* and *Allina II,* other lawsuits were filed by other hospitals, in which the Secretary committed to

courts in 2016 and again in 2019 to "give Plaintiffs their victory" – i.e., to take Part C Days out of

the Medicare/SSI Fraction-- in order to obtain Voluntary Remand of Allina III[4] and the Allina II

Type Cases[5].   Nonetheless, CMS has not done anything of the sort, indeed directly acting to the

contrary.  Defendant has not paid Plaintiff Hospitals on the basis that Defendant committed to use

when Defendant obtained remand from the Courts for voluntary compliance.

---

[4] Allina Health Sys. v. Burwell, No. 1:16-cv-150 (D.D.C. Jan. 29, 2016)
[5] In re Allina II-Type DSH Adjustment Cases, No. 1:19-mc-190 (D.D.C. Nov. 15, 2019)

16.    **Defendant Administered a Small Batch of Claims But Not Most, Which Was Arbitrary and Capricious.**    Thereafter, on information and belief, Plaintiff Hospitals allege that Defendant administered and paid, on the basis of the *Northeast* Decision, reimbursement claims of certain hospitals, consisting of the same reimbursement methodology issues as would apply to the Plaintiff Hospitals' claims here.    Even while Defendant administered and paid these same genre of claims for other hospitals, Defendant did NOT settle the claims of Plaintiff Hospitals who were similarly situated.

17.    Administering and paying the claims of some hospitals, but not others similarly situated such as Plaintiff Hospitals, was disparate and unequal application of the law, constituting arbitrary and capricious agency action.

18.    **In 2019, the PRRB Remanded All Part C Day Provider Appeals to the MAC to Sit and Wait Longer**.    In mid-2019, after the Supreme Court ruling in *Allina II*, the Provider Reimbursement Review Board ("PRRB") remanded all of the Plaintiff Hospitals' Part C Days appeals to the Medicare Administrative Contractors ("MAC"), for processing under CMS' instructions, which later followed in subsequent rules and Federal Register notices.

19.    **In 2020, CMS Issued a Blanket "HOLD" on All DSH Payments Involving Part C Days Questions, to Await a Three-Year Rulemaking Process.**    On April 3, 2020, nine years after the *Northeast* Decision and six years after *Allina I*,  and the year after *Allina II*, and still not having administered or paid the Plaintiff Hospitals' claims for fiscal years 2005-2013 and prior, Defendant issued Technical Direction Letter ("TDL") 200340 (the "Instruction"), instructing Medicare contractors "to halt an [sic] effort to settle any cost reports where [Part C] plan days shall or shall not be counted" in the calculation of providers' SSI ratios for purposes of their DSH adjustment for periods prior to October 1, 2013. TDL 200340 at 1 (Apr. 3, 2020), Allina II, 1:14-

cv-01415-TJK (D.D.C. Sept. 25, 2020), ECF No. 63-1. This was purportedly because CMS "has not yet completed the process of notice-and-comment rulemaking to establish a policy governing the treatment of [Part C] days prior to October 1, 2013" in light of *Allina II,* Medicare contractors "shall not take any further action which would require [Part C] days to be counted (or not counted) in the SSI ratio . . . until expressly instructed by CMS." *Id*. at 3.

20.     Given the history of the Court decisions and the CMS Rulings, this Instruction was clearly arbitrary and capricious as to Plaintiff Hospitals for the affected fiscal years.

21.     **Defendant Promulgated a "Retroactive" Rule to Put Part C Days in the Medicare/SSI Fraction Retroactively for the Years Prior to 2013 that the *Northeast, Allina* and *Allina II* Cases Held Could Not be So Changed**.    On August 6, 2020,  nine years after the *Northeast* Decision and six years after *Allina I*,  and the year after *Allina II*, and still not having administered or paid the Plaintiff Hospitals' claims for fiscal years 2005-2013 and prior, the agency issued CMS Ruling 1739-R, to this same effect, shortly after publishing a proposal to adopt-- retroactively for periods "prior to October 1, 2013"-- the same DSH calculation change (including Part C days in the SSI Fraction denominator) as had been overturned in the *Northeast* Decision and, more broadly, in *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1106 (D.C. Cir. 2014) ("Allina I"), and *Allina II*. 85 Fed. Reg. 47,723, 47,724-25 (Aug. 6, 2020).

22.     All during the time of the agency delay, Plaintiff Hospitals, through their representatives' repeat communications and requests to the agency contractors, were seeking and requesting administration and payment, objecting to the delay, and asking for an estimated time of administration, all to no avail. Plaintiff Hospitals' consultants were told there was no other avenue to pursue and just to continue waiting.   Once the Payment Hold was implemented, Plaintiff Hospitals were told there was nothing that could be done until the Payment Hold would be released

and the new rule issued after the rulemaking procedure.

23.    The rule promulgated by CMS on August 6, 2020, in 2023 became the "Final Rule" called CMS Rule 1739-F), which <u>purports to add Part C days to the denominator of the Medicare-SSI Fraction retroactively for thirty years</u>, for fiscal years 2013 and prior, and including fiscal years 2004 and prior, for which the *Northeast* Decision, *Allina I* and *Allina II*, have held (and CMS Rule 1498R2 confirmed) that Part C days **cannot be added** to the denominator of the Medicare-SSI fraction.

24.    **After the Three Year Wait for the Rule to be Final, Instead of Reinstating Former Appeals or Rights, CMS Required All Hospitals to Await New NPRs and RNPRs, File New Appeals and Await the Expected Denial of the Appeals, a Process That Would Take Two or Three More Years and Then Perhaps Another Decade in Federal Court**.  The Final Rule outlined, and thereafter CMS issued instructions and change requests, including but not limited to Change Request (CR) 13413 and Transmittal R12747OTN to explain, that CMS Rule 1739-F would be implemented by the Medicare Administrative Contractors (MAC) issuing a new Notice of Provider Reimbursement or Revised Notice of Provider Reimbursement, to each hospital for each fiscal year in which the hospital previously had an appeal which was dismissed by the earlier remands described above.  The hospital would be required to file a new appeal, within 180 days, from each such NPR or RNPR, and then wait for the Provider Reimbursement Review Board ("PRRB") to adjudicate those appeals; the results of such appeals are a foregone conclusion because the NPRs and RNPRs reflect the Final Rule 1739-F.

25.    **In 2024, the Montefiore Case Determined the Final Rule 1739-F to be Invalid, Yet Defendant is Still Not Paying Plaintiff Hospitals Proper Reimbursement.**  In 2024, the case of M*ontefiore Medical Center et al. v. Becerra* (U.S. District Court for the District of

Columbia Case number: 1:24-cv-01810 (D.D.C. June 24, 2024) was filed[6] challenging the validity of the Final Rule 1739-F due to its retroactivity, in contravention of *Northeast, Allina I* and *Allina II*. In September 2025, Judge AliKhan held CMS Rule 1739-F invalid due to impermissible retroactivity to Plaintiff Hospitals' fiscal years 2013 and prior. Defendant has still refused to properly pay the claims of Plaintiff Hospitals.

26.     Thus, all the delay, and the Payment Hold clearly are, at best, arbitrary and capricious, and at worst, the delay and the Payment Hold based on such a disingenuous rationale rise to the level of intentional disregard for the Plaintiff Hospitals' rights and damages. The delay in administering and paying claims is completely unreasonable, as to the Plaintiff Hospitals' outstanding reimbursement for the cost years 2013 and prior at issue in this Complaint.

27.     Plaintiff Hospitals have suffered harm as a result of these unreasonable delays. These are hospitals who serve a disproportionate share of indigent patients, which is why they are entitled to additional reimbursement from the Medicare system. Such hospitals cannot afford to have hundreds of thousands of dollars, let alone millions, withheld from their tight budgets for so many years. Health and welfare is indisputably at stake because hospitals with money tied up in the appeals process have a difficult time maintaining facilities and procuring supplies.

28.     Plaintiff hospitals are entitled to interest on the unpaid amounts pursuant to 42 U.S.C. § 1395oo(f)(2).

**THE FISCAL YEAR RE-ALIGNMENT ISSUE FURTHER REFLECTS AND COMPOUNDS DEFENDANT'S UNREASONABLE DELAY**

29.     The Medicare reimbursement amounts for 2013 and prior being withheld and delayed by Defendant under the Payment Hold and otherwise, for all these years, include amounts

---

[6] The Montefiore plaintiff had obtained Expedited Judicial Review ('EJR') from the PRRB to proceed to court. Hundreds if not thousands of hospitals have now done the same and filed Federal lawsuits following Montefiore. Judge AliKhan referenced the anticipated "deluge" of such filings.

related to the revised Medicare Fraction, in accordance with the *Baystate* Decision and *Northeast* Decision, and also amounts related to each hospital's election whether to use the federal fiscal year or the hospital's fiscal year for each year, as provided under 42 C.F.R. § 412.106(b)(2)-(3) (a hospital may elect to have the SSI Fraction determined based on its own fiscal year instead of the federal fiscal year, for any given cost reporting period) (herein, "Re-alignment").

30.    **Re-Alignments Were Invalidated and Required to be Re-Submitted in 2017**. In January 2017, Defendant's agency issued a Medicare program transmittal relating to the remanded hospital fiscal years awaiting administration, which created further delay of the Defendant's administration and payments for such Re-alignments. Change Request 9896, Transmittal No. 1776 (Jan. 27, 2017), stated effectively that all prior requests in the remanded claims for Re-alignment to the hospital's fiscal year would be invalid.  Change Request 9896 provided that each hospital would first obtain a Revised Notice of Program Reimbursement ("RNPR") based on the federal fiscal year, and then would need to re-request such Re-alignment in order to receive reimbursement on the hospital fiscal year basis, as the hospital had the right to elect by law.  Change Request 9896 did not state a time frame for administration of such re-requested Re-alignments after receipt of those further requests.   To date, only some of such re-requested Re-alignments have been administered or paid by Defendant.

31.    Had the remanded claims been administered and paid within a reasonable time, many hospitals would have their reimbursement reduced or only slightly increased with the Medicare-SSI Fraction "fix" under the methodology of the *Baystate* Decision and CMS Rule 1498R, but those same hospitals would have had significant reimbursement increases with Re-alignments applied to the corrected Medicare-SSI Fraction data.

32.    Because Re-alignment is elective, only hospitals who could project such

reimbursement increases would have been requesting Re-alignment, knowing that increased reimbursement would result.  Defendant's delay in such administration and payment has been and continues to be to the Plaintiff Hospital's detriment.

33.    In September 2019, the agency issued another Medicare program transmittal, Change Request 10484, Transmittal No. 2357 (Sept. 6, 2019), to provide hospitals a brief limited time window to request that their Medicare-SSI Fraction remand determination be based on the hospitals' cost reporting period instead of the federal fiscal year.   Again, no time frame or process was stated in the Change Request 10484 for administration of such requests.  There is also no requirement in the Change Request 10484 to administrate the Re-alignments within a reasonable period after receipt of those requests. And, for those hospitals who did not meet the deadline, the claims would still be determined first on the basis of a federal fiscal year and then a Re-alignment could be requested in the 'normal timeframe,' i.e., further delay.

34.    **Re-Alignments for 2004 and Prior Were Invalidated and Required to be Re-Submitted Again in 2024.** CMS Ruling 1498-R3 purported to change the calculations for hospital provider years 2004 and prior, in most cases reducing the amount of reimbursement to the hospitals.  Re-alignments were invalidated and required to be started over again.

35.    **Re-Alignments Were Invalidated and Required to be Re-Submitted and Started Over Once Again Starting in 2024, Based on the Impermissible Retroactive Rule Calculations with Part C Days in the Medicare/SSI Fraction.**  On July 26, 2024, CMS issued Change Request (CR) 13413 and Transmittal R12747OTN as operative instructions for fiscal year re-alignments of SSI ratios in the DSH calculation after the purported thirty-year retroactive "Final Rule" 1739-F.   Hospitals that had previously submitted written requests for SSI realignment (to match their fiscal year cost report start date) were allowed to confirm or withdraw those requests,

21

in other words, to start over with the re-alignment requests with Part C Days wrongfully included in the Medicare/SSI fraction and omitted from the Medicaid Fraction.  MACs were directed to send template letters to providers to verify pending requests that had been frozen under the Hold of any reimbursement involving Part C Days.

36.    Thus, since the *Baystate* Decision in 2008, the remand in 2010, the definitive *Northeast* Decision in 2011 determining (and thereafter CMS Rule 1498-R confirming in 2015), and *Allina* and *Allina II* determining, that Part C days are not to be included in the SSI Fraction for fiscal years 2013 and prior, Defendant's agency's contractors have not performed the revised determinations required under the Decisions and the rules, and have not paid the Plaintiff Hospitals any of the additional amounts due them for the periods at issue. All of Plaintiff Hospitals' Re-alignment requests have been unreasonably delayed for fiscal years 2013 and prior.

37.    Such failure to act in the more than fourteen years since the *Baystate* decision, and twelve years since the agency issued the acquiescence and remand, violates the agency's duty to complete the required payment re-determinations within a reasonable timeframe. Thereafter, Defendant issued Rule 1498-R3, which changed the instructions given under CMS Rule 1498-R2, and for many hospitals, reduced the favorable impact of re-alignment that existed under CMS Rule 1498-R2.    Rule 1498-R3 is also a change in policy without formal rulemaking, which is impermissible under the principals of *Allina* and *Allina II.*  Challenges to Rule 1498-R3 are now at the PRRB and are anticipated to take years to process.

38.    Had the Re-alignments been administered without unreasonable delay, at any time prior to Defendant's issues of Rule 1498-R3, Plaintiff Hospitals would have had their proper reimbursement.

39.    Plaintiff Hospitals which requested Re-alignment after the deadline in CMS

Change Request 10484 will be detrimentally affected by further delay because under the procedures of CMS Change Request 10484, Plaintiff Hospitals will first receive a Revised Notice of Program Reimbursement based on federal fiscal year and then have to again request Re-alignment on the basis of the hospital cost report year.  CMS Change Request 10484 provides no specific time frame for such administration of such subsequent Re-alignment requests.

40.    In 2025, the agency's contractors began to apply the revised Medicare-SSI Fractions calculated by CMS under CMS Ruling 1498-R for some of the cost reporting periods at issue but using the calculations with Part C Days in the Medicare/SSI Fraction, all as described above, which greatly reduces the reimbursement to the hospitals.

41.    The agency's unreasonable delay has cost the Plaintiff Hospitals tens of millions of dollars in funds that should have been paid to them many years ago for the higher costs that they incurred to treat low-income patients more than a decade or even two decades ago.

42.    Plaintiff Hospitals have no other avenue of relief available to cause the agency to perform its obligations with respect to the remands under the Ruling in a reasonable time period other than to file this Complaint.

43.    The Defendant's position is meritless that agency delay, and the Payment Hold instructions purportedly issued pending a formal rulemaking to include Part C days in the Medicare-SSI Fraction denominator[7], following *Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019) ("*Allina II*") --prevents relief here.  Such delay, and the Payment Hold, is altogether arbitrary and capricious as to the 2013 and prior Medicare cost years at issue, in light of the binding decisions of the Courts of Appeals and the Supreme Court that Part C days cannot be included in

---

[7] The Proposed Rule is called "Medicare Program; Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage", 85 Fed. Reg. 47,723-01 (Aug. 6, 2020) (proposed rule).  Whether this proposed rule would or would not comply with law for hospital fiscal years after 2004 is not addressed or an issue in this lawsuit.

the SSI Fraction denominator for fiscal year periods 2014 and prior.

44.     With regard to the Re-alignments, the Defendant's further delay is also arbitrary and capricious.

45.     Accordingly, this Court should enter an order compelling the payment actions that have been unreasonably delayed and unlawfully withheld. *See* 5 U.S.C. § 706(1).

## PARTIES

46.     The Plaintiff Hospitals in this action and hospital fiscal years at issue are as follows:

(1)     Pacific Alliance Medical Center, Provider No. 05-0018, Fiscal Years ending as of December 31, 2007, December 31, 2011 and December 31, 2012;

(2)     El Centro Regional Medical Center, Provider No. 05-0045, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2012 and June 30, 2013;

(3)     Scripps Mercy Hospital, Provider No. 05-0077, Fiscal Years ending as of September 30, 2006, September 30, 2007, September 30, 2009, September 30, 2010, September 30, 2011 and September 30, 2012;

(4)     Saint Jude Medical Center, Provider No. 05-0168, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2011, June 30, 2012 and June 30, 2013;

(5)     Scripps Memorial Hospital - Encinitas, Provider No. 05-0503, Fiscal Years ending as of September 30, 2007, September 30, 2008, September 30, 2009 and September 30, 2010;

(6)     Midstate Medical Center, Provider No. 07-0017, Fiscal Years ending as of September 30, 2008, September 30, 2010, September 30, 2011 and September 30, 2013;

(7)     Griffin Hospital, Provider No. 07-0031, Fiscal Years ending as of September 30,

2010, September 30, 2011, September 30, 2012, September 30, 2013;

(8)     Beebe Medical Center, Provider No. 08-0007, Fiscal Years ending as of June 30, 2007, June 30, 2008, June 30, 2010, June 30, 2011 and June 30, 2012;

(9)     Kuakini Medical Center, Provider No. 12-0007, Fiscal Years ending as of June 30, 2008, June 30, 2011 and June 30, 2012;

(10)    Saint Mary's Hospital - Centralia, Provider No. 14-0034, Fiscal Years ending as of December 31, 2008, December 31, 2011, December 31, 2012, December 31, 2013.

(11)    Good Samaritan Regional Health Center, Provider No. 14-0046, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(12)    University of Chicago Hospitals, Provider No. 14-0088, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2011 and June 30, 2013;

(13)    Methodist Medical Center of Illinois, Provider No. 14-0209, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010 and December 31, 2013;

(14)    Trinity Regional - West Campus, Provider No. 14-0280, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2012;

(15)    Marshalltown Medical & Surgical Center, Provider No. 16-0001, Fiscal Years ending as of October 31, 2010, October 31, 2011, October 31, 2012 and October 31, 2013;

(16)    Trinity Muscatine Hospital, Provider No. 16-0013, Fiscal Years ending as of December 31, 2011 and December 31, 2012;

(17)    Trinity Regional Medical Center - Fort Dodge, Provider No. 16-0016, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2013;

(18)    Iowa Lutheran Hospital, Provider No. 16-0024, Fiscal Years ending as of December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(19)    Saint Luke's Hospital - Cedar Rapids, Provider No. 16-0045, Fiscal Years ending as of December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(20)    Iowa Methodist Medical Center, Provider No. 16-0082, Fiscal Years ending as of December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(21)    Trinity Regional Medical Center - Terrace Park Bettendorf, Provider No. 16-0104, Fiscal Years ending as of December 31, 2011, December 31, 2012 and December 31, 2013;

(22)    Allen Memorial Hospital, Provider No. 16-0110, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2012;

(23)    The Finley Hospital, Provider No. 16-0117, Fiscal Years ending as of December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(24)    Saint Luke's Regional Medical Center - Sioux City, Provider No. 16-0146, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2013;

(25)    West Jefferson Medical Center, Provider No. 19-0039, Fiscal Years ending as

of December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011 and December 31, 2012;

(26)  Touro Infirmary, Provider No. 19-0046, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2012;

(27)  East Jefferson General Hospital, Provider No. 19-0146, Fiscal Years ending as of December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(28)  Mercy Hospital, Provider No. 20-0008, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(29)  Maine Medical Center, Provider No. 20-0009, Fiscal Years ending as of September 30, 2005, September 30, 2007, September 30, 2008, September 30, 2009, September 30, 2010, September 30, 2011, September 30, 2012 and September 30, 2013;

(30)  The Aroostook Hospital, Provider No. 20-0018, Fiscal Years ending as of September 30, 2006, September 29, 2012 and September 28, 2013;

(31)  Southern Maine Medical Center, Provider No. 20-0019, Fiscal Years ending as of April 30, 2006, April 30, 2007, April 30, 2008, April 30, 2009, September 30, 2009, September 30, 2010, September 30, 2011, September 30, 2012 and September 30, 2013;

(32)  Stephens Memorial Hospital, Provider No. 20-0032, Fiscal Years ending as of September 30, 2005, September 30, 2006, September 30, 2009 and September

30, 2010;

(33)     Eastern Maine Medical Center, Provider No. 20-0033, Fiscal Years ending as of September 29, 2007, September 27, 2008, September 26, 2009, September 25, 2010, September 24, 2011, September 29, 2012 and September 28, 2013;

(34)     HD Goodall Hospital, Provider No. 20-0040, Fiscal Years ending as of May 31, 2008, May 31, 2010, May 31, 2011, May 31, 2012 and May 31, 2013;

(35)     Inland Hospital, Provider No. 20-0041, Fiscal Years ending as of September 25, 2010, September 24, 2011 and September 29, 2012;

(36)     Maine Coast Memorial Hospital, Provider No. 20-0050, Fiscal Years ending as of June 30, 2006, June 30, 2008, June 30, 2009 and June 30, 2011;

(37)     Pen Bay Medical Center, Provider No. 20-0063, Fiscal Year ending as of March 31, 2009;

(38)     Milford Regional Medical Center, Provider No. 22-0090, Fiscal Years ending as of September 30, 2007, September 30, 2008, September 30, 2010, September 30, 2011, September 30, 2012 and September 30, 2013;

(39)     Saint Joseph Health Center - SSM, Provider No. 26-0005, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(40)     Saint Mary's - Jefferson City, Provider No. 26-0011, Fiscal Year ending as of December 31, 2013;

(41)     Saint Joseph Hospital of Kirkwood, Provider No. 26-0081, Fiscal Years ending as of December 31, 2011 and December 31, 2013;

(42)     Saint Mary's Health Center - MO, Provider No. 26-0091, Fiscal Years ending as

of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(43)    DePaul Health Center, Provider No. 26-0104, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011 and December 31, 2012;

(44)    Saint Joseph Hospital - West, Provider No. 26-0200, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(45)    Billings Clinic, Provider No. 27-0004, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2011, June 30, 2012 and June 30, 2013;

(46)    Community Medical Center, Provider No. 27-0023, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2011, June 30, 2012 and June 30, 2013;

(47)    HealthAlliance Hospital - Broadway Campus (Kingston), Provider No. 33-0004, Fiscal Years ending as of December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011 and December 31, 2012;

(48)    Saint Joseph's Medical Center - Yonkers, Provider No. 33-0006, Fiscal Years ending as of December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(49)    Jamaica Hospital Medical Center, Provider No. 33-0014, Fiscal Years ending as of December 31, 2005, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012, December 31, 2013.

(50)     Vassar Brothers Medical Center, Provider No. 33-0023, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(51)     Richmond University Medical Center, Provider No. 33-0028, Fiscal Years ending as of December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(52)     Saint Luke's Memorial Hospital - NY, Provider No. 33-0044, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2012;

(53)     Saint Luke's Roosevelt Hospital, Provider No. 33-0046, Fiscal Years ending as of December 31, 2005, December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011 and December 31, 2012, December 31, 2013;

(54)     Northern Dutchess Hospital, Provider No. 33-0049, Fiscal Year ending as of December 31, 2013;

(55)     Niagara Falls Memorial Medical Center, Provider No. 33-0065, Fiscal Years ending as of December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(56)     Midhudson RH of Westchester MC (Saint Francis Hospital), Provider No. 33-0067, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(57)     FF Thompson Hospital, Provider No. 33-0074, Fiscal Years ending as of

December 31, 2007, December 31, 2008, December 31, 2010 and December 31, 2011;

(58)   Olean General Hospital, Provider No. 33-0103, Fiscal Years ending as of December 31, 2007, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(59)   Nyack Hospital, Provider No. 33-0104, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(60)   Peconic Bay Medical Center, Provider No. 33-0107, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011 and December 31, 2012;

(61)   Lenox Hill Hospital, Provider No. 33-0119, Fiscal Year ending as of December 31, 2008;

(62)   Garnet Health Medical Center (formerly Orange MC / Arden Hill Hospital), Provider No. 33-0126, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(63)   Bon Secours Community Hospital, Provider No. 33-0135, Fiscal Years ending as of December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(64)   Saint Joseph's Hospital Health Center, Provider No. 33-0140, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(65)    Long Island College Hospital, Provider No. 33-0152, Fiscal Years ending as of December 31, 2006, December 31, 2007 and December 31, 2008;

(66)    Samaritan Medical Center, Provider No. 33-0157, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2013;

(67)    Good Samaritan Hospital, Provider No. 33-0158, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(68)    Community General Hospital, Provider No. 33-0159, Fiscal Year ending as of December 31, 2008;

(69)    Beth Israel Medical Center, Provider No. 33-0169, Fiscal Years ending as of December 31, 2005, December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(70)    Flushing Hospital Medical Center, Provider No. 33-0193, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(71)    Crouse Hospital, Provider No. 33-0203, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(72)    Erie County Medical Center, Provider No. 33-0219, Fiscal Years ending as of December 31, 2010 and December 31, 2011;

(73)    HealthAlliance Hospital - Mary's Ave Campus (Benedictine), Provider No. 33-0224, Fiscal Years ending as of December 31, 2007, December 31, 2009,

December 31, 2010 and December 31, 2012;

(74)   The Brookdale University Hospital and Medical Center, Provider No. 33-0233, Fiscal Years ending as of December 31, 2006, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(75)   MVHS - St. Elizabeth Medical Center, Provider No. 33-0245, Fiscal Years ending as of December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(76)   Saint Charles Hospital - NY, Provider No. 33-0246, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(77)   Mercy Medical Center, Provider No. 33-0259, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(78)   Saint Luke's Cornwall Hospital, Provider No. 33-0264, Fiscal Years ending as of December 31, 2006 and December 31, 2008;

(79)   Hudson Valley Hospital, Provider No. 33-0267, Fiscal Years ending as of December 31, 2007, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(80)   Good Samaritan Hospital Medical Center, Provider No. 33-0286, Fiscal Years ending as of December 31, 2005, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(81)   Southampton Hospital, Provider No. 33-0340, Fiscal Years ending as of

December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011 and December 31, 2012;

(82)   Saint John's Episcopal Hospital, Provider No. 33-0395, Fiscal Years ending as of December 31, 2006, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012, December 31, 2013.

(83)   Interfaith Community Hospital, Provider No. 33-0397, Fiscal Years ending as of December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(84)   Geisinger Community Medical Center, Provider No. 39-0001, Fiscal Years ending as of June 30, 2007 and June 30, 2010;

(85)   The Bloomsburg Hospital, Provider No. 39-0003, Fiscal Year ending as of June 30, 2010;

(86)   Mountain States - Johnson City Medical Center, Provider No. 44-0063, Fiscal Year ending as of June 30, 2002;

(87)   Mountain States - Indian Path Medical Center, Provider No. 44-0176, Fiscal Year ending as of June 30, 2002;

(88)   UT Health Tyler (fka East Texas Medical Center - Tyler), Provider No. 45-0083, Fiscal Years ending as of October 31, 2008, October 31, 2009, October 31, 2010 and October 31, 2011;

(89)   East Texas Medical Center - Athens, Provider No. 45-0389, Fiscal Years ending as of April 30, 2009, April 30, 2010, April 30, 2011 and April 30, 2012;

(90)   Valley Medical Center, Provider No. 50-0088, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31,

2011 and June 30, 2012;

(91)    Reynolds Memorial Hospital, Provider No. 51-0013, Fiscal Years ending as of September 30, 2007, September 30, 2008, September 30, 2010, September 30, 2011.

47.    Defendant is Robert F. Kennedy Jr., the Secretary of the Department of Health and Human Services ("agency"), the federal agency that administers the Medicare program. The Secretary is sued only in his official capacity. References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

48.    The Centers for Medicare and Medicaid Services ("CMS") is the component of the Secretary's agency with responsibility for day-to-day operation and administration of the Medicare program ("CMS" or "Defendant's agency"). CMS was formerly known as the Health Care Financing Administration.

49.    References to CMS or "Defendant's agency" herein refer to the agency and its predecessors.

## JURISDICTION AND VENUE

50.    This action arises under the Medicare Act, 42 U.S.C. § 1395 *et seq.,* and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*

51.    Jurisdiction is proper under 28 U.S.C. § 1361 and 28 U.S.C. § 1331.

52.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1).

## PROCEDURAL BACKGROUND

53.    Each of the Plaintiff Hospitals timely filed an appeal to the Provider Reimbursement Review Board ("PRRB") from a final DSH payment determination for the cost reporting periods at issue, as listed in paragraph 30 of this Complaint. In those appeals, the Plaintiff

Hospitals sought to correct the now undisputed errors and omissions in the agency's determination of the Medicare-SSI Fractions.

54.    The PRRB remanded the Plaintiff Hospitals' appeals for the cost reporting periods at issue under CMS Rulings, instructions and change requests. These remand orders directed the Medicare contractors responsible for administering the Plaintiff Hospitals' cost reports to apply the revised Medicare-SSI Fractions calculated by the agency on remand and to pay Plaintiff Hospitals the additional amounts due as a result of those revisions. The Board's remand orders were issued as early as June 4, 2012, in some cases.

55.    Many of the Plaintiff Hospitals also requested to have the Medicare-SSI Fractions for the cost reporting periods at issue calculated based on the Re-alignment of patient days occurring in the hospitals' own cost reporting periods.

56.    On October 4, 2019, certain Plaintiff Hospitals responded to CMS's September 6, 2019, transmittal 2357, Change Request 10484 which allowed providers to submit election requests for the processing of 1498-R and 1498-R2 for Re-alignments.

57.    **Plaintiff Hospitals' Appeals to the PRRB for Unreasonable Delay Were Dismissed, Which (Absent Mandamus) Would Leave the Hospitals Without a Remedy for the Wrongful Unreasonable Delay.** Plaintiff Hospitals duly filed appeals with the PRRB seeking relief from the unreasonable delay, which were dismissed by the PRRB on November 19, 2025, citing lack of jurisdiction due to the fact that a "final determination" is required for appeal. This is a completely illogical and circular position which  a) defies this Court's dicta in the Alameda[8] case that Defendant does have jurisdiction of the "unreasonable delay" issue, b) is circular in that the entire impetus for the "unreasonable delay" appeal is that there is no final determination in a

---

[8] *Alameda County Medical Center v. Becerra*, 23-cv-0690-APM (D.D.C.) ("*Alameda*")

reasonable time, and c) proves the underlying point that the Defendant's conduct continues to perpetuate unreasonable delay.

58.    Plaintiffs submit that there must be a remedy for this unreasonable delay – which clearly will need to be in Court because Defendant will not address it.  It cannot be the result that the Court cannot hear the issue without Plaintiffs first channeling via the PRRB, while the PRRB declines to hear the issue citing lack of jurisdiction, leaving Plaintiffs with no remedy at all, and only more unreasonable delay.

59.    Other courts have found jurisdiction, including in *Baylor All Saints Med. Ctr. v. Becerra*, 4:24-cv-00432-P (N.D. Tex. Aug. 15, 2024), where—in an analogous situation—the District Court for the Northern District of Texas found jurisdiction to exist, because exhaustion of remedies would be futile.   The court reasoned that, while the PRRB has authority over questions arising under the statutory regime, it clearly lacks the Constitutional power to adjudicate the legal question – which in this case, is whether the delay in adjudication has been unreasonable AND not in conformity with the statute which has already (long ago) been adjudicated by the court in *Northeast,  Allina* and *Allina II.*

60.    Had the PRRB acknowledged jurisdiction of the Plaintiff Hospitals' appeals, the PRRB would also have held that it did not have authority to decide the question presented and either denied the appeals on that basis or granted Expedited Judicial Review under 42 U.S.C. § 1395oo(f)(1), which Congress enacted to provide for immediate judicial review for matters where the Board lacks power to "grant the relief sought" and thereby avoid the delay inherent in "requiring providers to pursue a time-consuming and irrelevant administrative review merely to have the right to bring suit in a U.S. District Court." H.R. Rep. No. 96-1167, at 394 (1980), reprinted in 1980 U.S.C.C.A.N. 5526, 5757.  Thus, remand to the PRRB with instructions to accept

jurisdiction of the Plaintiff Hospitals' appeals would serve no useful purpose, and indeed cause further delay.

61.     On November 19, 2025, PRRB filed a Notice of Dismissal as to the following hospitals:

(1)     Pacific Alliance Medical Center, Provider No. 05-0018, Fiscal Years ending as of December 31, 2007, December 31, 2011 and December 31, 2012;

(2)     El Centro Regional Medical Center, Provider No. 05-0045, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2012 and June 30, 2013;

(3)     Scripps Mercy Hospital, Provider No. 05-0077, Fiscal Years ending as of September 30, 2006, September 30, 2007, September 30, 2009, September 30, 2010, September 30, 2011 and September 30, 2012;

(4)     Saint Jude Medical Center, Provider No. 05-0168, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2011, June 30, 2012 and June 30, 2013;

(5)     Scripps Memorial Hospital - Encinitas, Provider No. 05-0503, Fiscal Years ending as of September 30, 2007, September 30, 2008, September 30, 2009 and September 30, 2010;

(6)     Midstate Medical Center, Provider No. 07-0017, Fiscal Years ending as of September 30, 2008, September 30, 2010, September 30, 2011 and September 30, 2013;

(7)     Griffin Hospital, Provider No. 07-0031, Fiscal Years ending as of September 30, 2010, September 30, 2011, September 30, 2012, September 30, 2013;

(8)     Beebe Medical Center, Provider No. 08-0007, Fiscal Years ending as of June 30, 2007, June 30, 2008, June 30, 2010, June 30, 2011 and June 30, 2012;

(9)     Kuakini Medical Center, Provider No. 12-0007, Fiscal Years ending as of

June 30, 2008, June 30, 2011 and June 30, 2012;

(10)    Saint Mary's Hospital - Centralia, Provider No. 14-0034, Fiscal Years ending as of December 31, 2008, December 31, 2011, December 31, 2012, December 31, 2013.

(11)    Good Samaritan Regional Health Center, Provider No. 14-0046, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(12)    University of Chicago Hospitals, Provider No. 14-0088, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2011 and June 30, 2013;

(13)    Methodist Medical Center of Illinois, Provider No. 14-0209, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010 and December 31, 2013;

(14)    Trinity Regional - West Campus, Provider No. 14-0280, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2012;

(15)    Marshalltown Medical & Surgical Center, Provider No. 16-0001, Fiscal Years ending as of October 31, 2010, October 31, 2011, October 31, 2012 and October 31, 2013;

(16)    Trinity Muscatine Hospital, Provider No. 16-0013, Fiscal Years ending as of December 31, 2011 and December 31, 2012;

(17)    Trinity Regional Medical Center - Fort Dodge, Provider No. 16-0016, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2013;

(18)    Iowa Lutheran Hospital, Provider No. 16-0024, Fiscal Years ending as of December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(19)    Saint Luke's Hospital - Cedar Rapids, Provider No. 16-0045, Fiscal Years ending as of December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(20)    Iowa Methodist Medical Center, Provider No. 16-0082, Fiscal Years ending as of December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(21)    Trinity Regional Medical Center - Terrace Park Bettendorf, Provider No. 16-0104, Fiscal Years ending as of December 31, 2011, December 31, 2012 and December 31, 2013;

(22)    Allen Memorial Hospital, Provider No. 16-0110, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2012;

(23)    The Finley Hospital, Provider No. 16-0117, Fiscal Years ending as of December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(24)    Saint Luke's Regional Medical Center - Sioux City, Provider No. 16-0146, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2013;

(25)    West Jefferson Medical Center, Provider No. 19-0039, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011 and December 31, 2012;

(26)    Touro Infirmary, Provider No. 19-0046, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2012;

(27)    East Jefferson General Hospital, Provider No. 19-0146, Fiscal Years ending as of December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(28)    Mercy Hospital, Provider No. 20-0008, Fiscal Years ending as of December

31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(29)    Maine Medical Center, Provider No. 20-0009, Fiscal Years ending as of September 30, 2005, September 30, 2007, September 30, 2008, September 30, 2009, September 30, 2010, September 30, 2011, September 30, 2012 and September 30, 2013;

(30)    The Aroostook Hospital, Provider No. 20-0018, Fiscal Years ending as of September 30, 2006, September 29, 2012 and September 28, 2013;

(31)    Southern Maine Medical Center, Provider No. 20-0019, Fiscal Years ending as of April 30, 2006, April 30, 2007, April 30, 2008, April 30, 2009, September 30, 2009, September 30, 2010, September 30, 2011, September 30, 2012 and September 30, 2013;

(32)    Stephens Memorial Hospital, Provider No. 20-0032, Fiscal Years ending as of September 30, 2005, September 30, 2006, September 30, 2009 and September 30, 2010;

(33)    Eastern Maine Medical Center, Provider No. 20-0033, Fiscal Years ending as of September 29, 2007, September 27, 2008, September 26, 2009, September 25, 2010, September 24, 2011, September 29, 2012 and September 28, 2013;

(34)    HD Goodall Hospital, Provider No. 20-0040, Fiscal Years ending as of May 31, 2008, May 31, 2010, May 31, 2011, May 31, 2012 and May 31, 2013;

(35)    Inland Hospital, Provider No. 20-0041, Fiscal Years ending as of September 25, 2010, September 24, 2011 and September 29, 2012;

(36)    Maine Coast Memorial Hospital, Provider No. 20-0050, Fiscal Years ending as of June 30, 2006, June 30, 2008, June 30, 2009 and June 30, 2011;

(37)    Pen Bay Medical Center, Provider No. 20-0063, Fiscal Year ending as of March 31, 2009;

(38)    Milford Regional Medical Center, Provider No. 22-0090, Fiscal Years ending as of September 30, 2007, September 30, 2008, September 30, 2010, September 30, 2011, September 30, 2012 and September 30, 2013;

(39)    Saint Joseph Health Center - SSM, Provider No. 26-0005, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(40)    Saint Mary's - Jefferson City, Provider No. 26-0011, Fiscal Year ending as of December 31, 2013;

(41)    Saint Joseph Hospital of Kirkwood, Provider No. 26-0081, Fiscal Years ending as of December 31, 2011 and December 31, 2013;

(42)    Saint Mary's Health Center - MO, Provider No. 26-0091, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(43)    DePaul Health Center, Provider No. 26-0104, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011 and December 31, 2012;

(44)    Saint Joseph Hospital - West, Provider No. 26-0200, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(45)    Billings Clinic, Provider No. 27-0004, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2011, June 30, 2012 and June 30, 2013;

(46)    Community Medical Center, Provider No. 27-0023, Fiscal Years ending as of June 30, 2008, June 30, 2010, June 30, 2011, June 30, 2012 and June 30, 2013;

(47)    HealthAlliance Hospital - Broadway Campus (Kingston), Provider No. 33-0004, Fiscal Years ending as of December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011 and December 31, 2012;

(48)    Saint Joseph's Medical Center - Yonkers, Provider No. 33-0006, Fiscal Years ending as of December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(49)    Jamaica Hospital Medical Center, Provider No. 33-0014, Fiscal Years ending as of December 31, 2005, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012, December 31, 2013.

(50)    Vassar Brothers Medical Center, Provider No. 33-0023, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(51)    Richmond University Medical Center, Provider No. 33-0028, Fiscal Years ending as of December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(52)    Saint Luke's Memorial Hospital - NY, Provider No. 33-0044, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2012;

(53)    Saint Luke's Roosevelt Hospital, Provider No. 33-0046, Fiscal Years ending as of December 31, 2005, December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011 and December 31, 2012, December 31, 2013;

(54)    Northern Dutchess Hospital, Provider No. 33-0049, Fiscal Year ending as

of December 31, 2013;

(55)    Niagara Falls Memorial Medical Center, Provider No. 33-0065, Fiscal Years ending as of December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(56)    Midhudson RH of Westchester MC (Saint Francis Hospital), Provider No. 33-0067, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(57)    FF Thompson Hospital, Provider No. 33-0074, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010 and December 31, 2011;

(58)    Olean General Hospital, Provider No. 33-0103, Fiscal Years ending as of December 31, 2007, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(59)    Nyack Hospital, Provider No. 33-0104, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(60)    Peconic Bay Medical Center, Provider No. 33-0107, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011 and December 31, 2012;

(61)    Lenox Hill Hospital, Provider No. 33-0119, Fiscal Year ending as of December 31, 2008;

(62)    Garnet Health Medical Center (formerly Orange MC / Arden Hill Hospital), Provider No. 33-0126, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(63)     Bon Secours Community Hospital, Provider No. 33-0135, Fiscal Years ending as of December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(64)     Saint Joseph's Hospital Health Center, Provider No. 33-0140, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(65)     Long Island College Hospital, Provider No. 33-0152, Fiscal Years ending as of December 31, 2006, December 31, 2007 and December 31, 2008;

(66)     Samaritan Medical Center, Provider No. 33-0157, Fiscal Years ending as of December 31, 2010, December 31, 2011 and December 31, 2013;

(67)     Good Samaritan Hospital, Provider No. 33-0158, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(68)     Community General Hospital, Provider No. 33-0159, Fiscal Year ending as of December 31, 2008;

(69)     Beth Israel Medical Center, Provider No. 33-0169, Fiscal Years ending as of December 31, 2005, December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(70)     Flushing Hospital Medical Center, Provider No. 33-0193, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(71)     Crouse Hospital, Provider No. 33-0203, Fiscal Years ending as of

December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(72)    Erie County Medical Center, Provider No. 33-0219, Fiscal Years ending as of December 31, 2010 and December 31, 2011;

(73)    HealthAlliance Hospital - Mary's Ave Campus (Benedictine), Provider No. 33-0224, Fiscal Years ending as of December 31, 2007, December 31, 2009, December 31, 2010 and December 31, 2012;

(74)    The Brookdale University Hospital and Medical Center, Provider No. 33-0233, Fiscal Years ending as of December 31, 2006, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(75)    MVHS - St. Elizabeth Medical Center, Provider No. 33-0245, Fiscal Years ending as of December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(76)    Saint Charles Hospital - NY, Provider No. 33-0246, Fiscal Years ending as of December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(77)    Mercy Medical Center, Provider No. 33-0259, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(78)    Saint Luke's Cornwall Hospital, Provider No. 33-0264, Fiscal Years ending as of December 31, 2006 and December 31, 2008;

(79)    Hudson Valley Hospital, Provider No. 33-0267, Fiscal Years ending as of December 31, 2007, December 31, 2010, December 31, 2011, December 31, 2012 and

December 31, 2013;

(80)    Good Samaritan Hospital Medical Center, Provider No. 33-0286, Fiscal Years ending as of December 31, 2005, December 31, 2008, December 31, 2009, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(81)    Southampton Hospital, Provider No. 33-0340, Fiscal Years ending as of December 31, 2006, December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011 and December 31, 2012;

(82)    Saint John's Episcopal Hospital, Provider No. 33-0395, Fiscal Years ending as of December 31, 2006, December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012, December 31, 2013.

(83)    Interfaith Community Hospital, Provider No. 33-0397, Fiscal Years ending as of December 31, 2008, December 31, 2010, December 31, 2011, December 31, 2012 and December 31, 2013;

(84)    Geisinger Community Medical Center, Provider No. 39-0001, Fiscal Years ending as of June 30, 2007 and June 30, 2010;

(85)    The Bloomsburg Hospital, Provider No. 39-0003, Fiscal Year ending as of June 30, 2010;

(86)    Mountain States - Johnson City Medical Center, Provider No. 44-0063, Fiscal Year ending as of June 30, 2002;

(87)    Mountain States - Indian Path Medical Center, Provider No. 44-0176, Fiscal Year ending as of June 30, 2002;

(88)    UT Health Tyler (fka East Texas Medical Center - Tyler), Provider No. 45-0083, Fiscal Years ending as of October 31, 2008, October 31, 2009, October 31, 2010 and

October 31, 2011;

(89)    East Texas Medical Center - Athens, Provider No. 45-0389, Fiscal Years ending as of April 30, 2009, April 30, 2010, April 30, 2011 and April 30, 2012;

(90)    Valley Medical Center, Provider No. 50-0088, Fiscal Years ending as of December 31, 2007, December 31, 2008, December 31, 2010, December 31, 2011 and June 30, 2012;

(91)    Reynolds Memorial Hospital, Provider No. 51-0013, Fiscal Years ending as of September 30, 2007, September 30, 2008, September 30, 2010, September 30, 2011.

**(1) CAUSES OF ACTION**

### Count I – Undue Delay in Processing Revised Payment Determinations

62.    The Plaintiff Hospitals repeat the allegations in paragraphs 1–44 of this Complaint as if fully set forth herein.

63.    The APA "requires that an agency 'proceed to conclude a matter presented to it' and that it do so 'within a reasonable time.'" *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992) (quoting 5 U.S.C. § 555(b)).  The APA further requires a reviewing court to "'compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. § 706(1)).  Accordingly, courts "designated by statute to review agency actions may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed." *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*").

64.    This Court is authorized by statute to review final decisions of Defendant as to the amount of Medicare program reimbursement due providers of services, like the Plaintiff Hospitals at issue in this action. See 42 U.S.C. § 1395oo(f)(1). The Court has jurisdiction over this action and the power to grant relief in the nature of mandamus to compel Defendant to perform a

mandatory obligation that has been unlawfully withheld and unreasonably delayed. See In re Medicare Reimbursement Litigation, 414 F.3d 7, 13 (D.C. Cir. 2005) (affirming this Court's mandamus order directing Defendant to perform the agency's obligation to reopen and correct erroneous Medicare payment determinations).

65.    In the many years since the PRRB remanded the Plaintiff Hospitals' appeals, the agency's contractors have not applied the revised Medicare-SSI Fractions calculated by the agency and have not paid the Plaintiff Hospitals any additional DSH amounts due as a result of the revisions to the Medicare-SSI Fractions.

66.    The agency's delay in implementing the payment revisions required violates the APA's requirement to act within a reasonable period, and the Plaintiff Hospitals have no other avenue of relief available to cause the agency to perform its obligations in a reasonable timeframe.

67.    This Court also has the jurisdiction to grant the relief requested where, as here, "(1) the plaintiff[s] ha[ve] a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff[s]." *In re Medicare Reimbursement Litig.*, 414 F.3d at 10 (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)).

68.    The Plaintiff Hospitals have a right to these payment redeterminations as required by the agency's own rulings.  The agency has a non-discretionary duty to complete such required redeterminations within a reasonable timeframe

69.    Generally,  section  405.1803  of  the  governing regulation states that, "[u]pon receipt of a provider's cost report, or amended cost report where permitted or required, *the contractor must within a reasonable period of time (as specified in § 405.1835(c)(1))* furnish the provider . . . a written notice reflecting the contractor's final determination of the total amount of reimbursement due the provider." 42 C.F.R. § 405.1803(a) (emphasis added).  Section

405.1835(c)(1), in turn, provides that a reasonable period of time is 12 months. *See id.* §
405.1835(c)(1) (stating that "a provider . . . has a right to a Board hearing" if "[a] final contractor
determination for the provider's cost reporting period is not issued . . . within 12 months after
the date of receipt by the contractor of the provider's perfected cost report or amended cost
report"). Furthermore, the Plaintiff Hospitals have exhausted their efforts to compel the agency
to perform this non-discretionary duty and have no other avenue available for seeking relief.

70.    The so-called "*TRAC* factors," which serve "as useful guidance as to whether a
delay is 'so egregious as to warrant mandamus,'" also support the relief requested here. *See Am.
Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (identifying the factors and quoting
*TRAC*, 750 F.2d at 80). With respect to the "most important factor" of time, *In re Core Commc'ns,
Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), the length of delay here is far from reasonable. While
"'[t]here is no *per se* rule as to how long is too long,' a 'reasonable time for agency action is
typically counted in weeks or months, not years.'" *In re Public Emps. for Envtl. Resp.*, 957 F.3d
267, 274 (D.C. Cir. 2020); *see also Nader v. FCC*, 520 F.2d 182, 206 (D.C. Cir. 1975) (agreeing
that "nine years should be enough time for any agency to decide almost any issue"). Courts
regularly find unreasonable agency delay where the agency fails to act within a few years. *See,
e.g.*, *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (characterizing a
"six-year-plus delay" as "nothing less than egregious"); *In re Core Commc'ns, Inc.*, 531 F.3d
849, 850 (D.C. Cir. 2008) (granting relief after an agency's "egregious" seven-year delay). In
addition, "[h]ealth and welfare are indisputably at stake" because "hospitals with 'money tied up
in the appeals process' have a difficult time maintaining facilities and procuring supplies." *Am.
Hosp. Ass'n v. Azar*, No. CV 14-851 (JEB), 2018 WL 5723141, at *3 (D.D.C. Nov. 1, 2018).

71.    Notwithstanding any other agency or contractor priorities, the Plaintiff

Hospitals also have substantial interests in receiving the delayed funds, which are critical to their ability to continue to furnish care to their communities, especially in light of the COVID-19 pandemic and economic factors thereafter. *See id.* ("[T]he 'lengthy payment delays . . . affect hospitals' willingness and ability to provide care,' and therefore prejudice both hospitals and their patients." (citation omitted)).

72.    To the extent that the agency takes the position that the agency's hold on payment determinations now prevents it from providing the relief sought here, that Payment Hold is invalid as arbitrary, capricious, and otherwise contrary to law.

73.    The Payment Hold and unreasonable delays are arbitrary and capricious as applied to cost years at issue here for all the foregoing reasons, and because Defendant does not provide any explanation for treating these years or provider hospitals differently than other cost years or provider hospitals. Following his loss in the *Northeast* Decision, Defendant settled hundreds of cases addressing the Part C issue, for cost years occurring in 2004 and earlier, over the course of many years by instructing his contractors to exclude the contested Part C days from the denominator of the Medicare fraction and include them in the numerator of the Medicaid Fraction. By changing course and further delaying the issuance of revised payment determinations for these earlier years to revisit the treatment of Part C days, the Instruction and CMS Ruling 1739-R have created a situation where similarly- situated parties are treated dissimilarly, which is an arbitrary and capricious agency action. *See Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996) ("A long line of precedent has established that an agency action is arbitrary when the agency offered insufficient reasons for treating similar situations differently.").

74.    Defendant's delay and its issuance of the Payment Hold is also disingenuous and disregards the fact that the agency previously acquiesced to the *Northeast* decision by directing

the exclusion of Part C days in the denominator of the Medicare SSI Fraction for discharges before October 1, 2004.  *See supra* ¶ 24; *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (observing that the failure to consider an important factor can "alone" render an agency action arbitrary and capricious); *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 430 (D.C. Cir. 2018) ("An agency's failure to consider an important aspect of the problem is one of the hallmarks of arbitrary and capricious reasoning.").

75.    The unreasonable delay are also arbitrary and capricious as overbroad; no new rule should have any bearing given the Court of Appeals' decision in *Northeast, Allina and Allina II*. *See Nat'l Mining Ass'n v. Babbitt*, 172 F.3d 906, 913 (D.C. Cir. 1999) (concluding that an agency "regulation is both arbitrary and capricious because it is irrationally overbroad" and vacating it as a result).

76.    The ongoing unreasonable delay also violate the special notice-and-comment rulemaking provision of the Medicare Act.  42 U.S.C. § 1395hh(a)(2).  This provision prohibits a "rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard" governing the payment for services from "tak[ing] effect unless it is promulgated" through notice-and-comment rulemaking.  *Id*.  In *Allina II*, the Supreme Court held that the agency's attempted re-adoption of the 2004 Part C policy change was at least a statement of policy governing payment for services, and therefore was required to undergo notice-and-comment rulemaking before it could take effect. *Allina II*, 139 S. Ct. at 1810–14.  Neither the Instruction nor CMS Ruling 1739-R underwent notice-and-comment rulemaking before becoming effective. This is exactly the type of agency action the Medicare Act's special requirements seek to prevent. *See id.* at 1808 ("As Medicare has grown, so has Congress's interest in ensuring that the public has a chance to be heard before changes are made to its administration.").  By failing to give

regulated parties notice and the ability to comment on the Instruction or CMS Ruling 1739-R, the agency has again violated the terms of section 1395hh(a)(2), as interpreted by the Supreme Court in *Allina II*.

77.     The Instruction and the portion of CMS Ruling 1739-R purporting to hold the issuance of all payment determinations for years before 2013 have also been inconsistently applied by the agency, and for that reason is also arbitrary and capricious agency action.  *See Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005) ("[A]n agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.").  Upon information and belief, Defendant's agency, through its Medicare contractors, has otherwise issued other revised payment determinations impacting the DSH calculation since the April 2020 issuance of the Instruction and the August 2020 publication of CMS Ruling 1739-R, demonstrating that the agency's contractors are able to, and in fact do, issue final payment determinations impacting DSH.

78.     The unreasonable delay in administering and paying claims to Plaintiff Hospitals for at least fourteen years is an unreasonable delay to the financial detriment of Plaintiff Hospitals. It is disingenuous for Defendant to say that they are "waiting for the new rule" that adds Part C days to the Medicare fraction denominator, in light of the *Northeast* Decision, *Allina* and *Allina II* which state that Part C days cannot be added to the Medicare/SSI Fraction and omitted from the Medicaid Fraction because no formal rulemaking was done and effective until 2014. "Forthcoming" or attempted "retroactive" rule changes (which courts have already found to be impermissible) do not justify unreasonable delay here, given more than fourteen years that have passed and the harm to Plaintiff Hospitals.

**Count II – Re-Alignment Calculation Of Medicare-SSI Fractions**
**For Hospital Cost Reporting Periods**

79.     The Plaintiff Hospitals repeat the allegations in paragraphs 1–77 of this Complaint as if fully set forth herein.

80.     The Plaintiff Hospitals listed in this Complaint requested Re-alignment, e.g., recalculation of the claimed reimbursement using the corrected Medicare-SSI Fraction based on hospital cost reporting periods rather than the Federal Fiscal Year.

81.     The Plaintiff Hospitals have a statutory right to DSH calculations based on patient days in the hospital's own cost reporting periods. In enacting the DSH statute, Congress mandated that the SSI fraction be calculated "with respect to a cost reporting period of a hospital" based on the hospital's patient days "for such period." 42 U.S.C. § 1395ww(d)(5)(F)(vi), (d)(5)(F)(vi)(I).

82.     The agency's own rules provide that hospitals' requests for calculation of DSH based on cost reporting periods is binding for those cost reporting periods. *See* 42 C.F.R. § 413.106(b)(3); *see also* 51 Fed. Reg. at 31,459 ("[I]f a hospital has its SSI[ fraction] recomputed based on its own cost reporting period, this percentage will be used for purposes of its disproportionate share adjustment whether the result is higher or lower than the percentage computed based on the Federal fiscal year."); 56 Fed. Reg. 43,358, 43,379 (Aug. 30, 1991) ("If the hospital requests this recalculation, this SSI percentage will be used, whether it is lower or higher than the SSI percentage calculated using the Federal fiscal year."); 60 Fed. Reg. 45,778, 45,812 (Sep. 1, 1995) ("[I]t has been our consistent policy that a hospital that requests a recalculation of its Medicare Part A/SSI percentage based on its cost reporting period must accept the result of that calculation in place of the Federal fiscal year calculation."); *id.* ("We would perform a recalculation only once per hospital per cost report period, and the resulting percentage

becomes the hospital's official Medicare Part A/SSI percentage for that period."); 70 Fed. Reg. 47,439–47,440 (Aug. 12, 2005) ("[A] hospital may request to have its Medicare-SSI Fraction recomputed based on the hospital's cost reporting period . . . and the hospital must accept the resulting DSH percentage for that year, whether or not it is a more favorable number than the DSH percentage based on the Federal fiscal year.").

83.     The use of Medicare-SSI Fractions based on the federal fiscal year in revised NPRs issued on remand for these Plaintiff Hospitals would violate both the DSH statute and the agency's own implementing regulation providing for calculation based on hospital cost reporting periods if elected by hospitals, and further providing for the inability to change that election.  It would also violate CMS's September 6, 2019, transmittal, specifically providing hospitals the choice not to receive revised NPRs on remand using federal fiscal year Medicare-SSI Fractions.  Under these authorities, hospitals are entitled to DSH payment determinations on remand incorporating Medicare-SSI Fractions based on the hospitals' cost reporting periods.

84.     Accordingly, the Plaintiff Hospitals request an order requiring Defendant to ensure that the Medicare administrative contractors apply initially on remand Medicare-SSI Fractions for the cost reporting periods identified in paragraph 39, based on cost reporting periods rather than federal fiscal year.

## RELIEF REQUESTED

85.     The Plaintiff Hospitals request an Order applicable to cost years for fiscal years 2013 and prior:

(a).  Requiring Defendant without further delay to cause the agency's administrative contractors to apply revised Medicare-SSI Fractions and Medicaid Fractions and issue revised payment determinations to all affected hospitals, reflecting different DSH amounts due Plaintiff

Hospitals as a result of the recalculation for the years;

(b).  Requiring Defendant to ensure that the agency's contractors apply initially on remand revised Medicare-SSI Fractions and Medicaid Fractions Medicare-SSI Fractions for the realignments to the cost reporting periods where hospitals have requested re-alignments, calculated based on hospital cost reporting periods rather than the Federal fiscal year;

(c).  Requiring Defendant to pay the Plaintiff Hospitals and/or other affected hospitals interest on the additional sums due as result of the revisions to the Medicare-SSI Fractions including related Re-alignments, calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

(d).  OR ALTERNATIVELY, if the Court will not proceed with Mandamus without administration of the underlying appeals by the PRRB, then requiring the PRRB to reinstate, accept jurisdiction of and administrate the appeals of Plaintiff Hospitals that were dismissed as described in this Complaint.

(e).  Requiring Defendant to pay legal fees and costs incurred by the Plaintiff Hospitals in bringing this action; and

(f).  Providing such other relief as the Court may consider appropriate.

Dated: January 14, 2026

By:   _/s/_ Courtney Toomath-West_____
        Ellen K. Wolf (CA Bar No. 110686)
        ewolf@wolfwallenstein.com
        Christopher J. Cummiskey (SBN 244249)
        ccummiskey@wolfwallenstein.com
        **WOLF WALLENSTEIN, PC**
        11400 West Olympic Boulevard, Suite 700
        Los Angeles, California 90064
        Telephone: (310) 622-1000
        Facsimile: (310) 457-9087

        *Pro Hac Vice Admission Pending*

Roya Vasseghi (DC Bar No. 1014058)
Courtney Toomath-West (DC Bar No.1719037)
roya@vasseghibuddlaw.com
courtney@vasseghilaw.com
VASSEGHI LAW GROUP
9663-D Main Street, Fairfax, Virginia 22031
Telephone: (703) 215-9358
Facsimile: (703) 563-7401
*Attorneys for Plaintiffs*